8915-0007/mmc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

IBIS BREWSTER,

                                        Plaintiff,

                                                            04 CIV 4204 (CM)(LMS)

        -against-

CITY OF POUGHKEEPSIE,

                                        Defendant.
------------------------------------------------------------------------x

## DEFENDANT'S TRIAL MEMORANDUM

McCABE & MACK LLP
David L. Posner, Esq.
*Attorneys for Defendant*
63 Washington Street
P.O. Box 509
Poughkeepsie, NY 12602-0509
Tel: (845) 486-6800

8915-0007/mmc

The City of Poughkeepsie respectfully submits this Trial Memorandum to set forth the relevant law regarding certain legal issues which may arise during the trial.  With respect to damages, this memorandum addresses certain areas of proof that should be excluded.

**If the Evidence Establishes That the City Had an Anti-Discrimination**
**Policy that Was Known to Brewster But Not Followed, Then the City is**
**Entitled to a Directed Verdict on Brewster's Title VII Claims.**

Brewster alleges that she had derogatory comments with respect to speaking Spanish directed at her by both supervisors and co-workers.  See Pre-Trial Order, Plaintiff's Contentions, at 3.  If the evidence shows that the City had an anti-discrimination policy, that Brewster was aware of such policy, and that Brewster failed to take advantage of the complaint procedure therein, then the City is relieved of any liability for such behavior.

In 1998, the United States Supreme Court, in the twin cases of Burlington Industries v. Ellerth, 524 U.S. 742 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998), established that, while there is a presumption that an employer is vicariously liable for harassment committed by plaintiff's supervisor, the employer may raise an affirmative defense where (a) the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (b) the plaintiff employee unreasonably failed to take advantage of any corrective or preventative opportunities provided by the employer.  Ellerth, 524 U.S. at 796; Faragher, 524 U.S. at 807.  An anti-harassment policy with a complaint procedure will ordinarily be persuasive evidence of the first element, and the employee's failure to follow the complaint procedure will "normally suffice" to meet the employer's burden as to the second element.  See id.

While the Faragher/Ellerth defense, as it has come to be known, was established in the context of sexual harassment cases, it has been equally applied in all types of employment discrimination cases, including racial and national origin harassment.  See, e.g., Breland-

8915-0007/mmc

Starling v. Disney Publishing Worldwide, 166 F.Supp.2d 826, 835 (S.D.N.Y. 2001)

(defendant employer entitled to summary judgment based on *Faragher* defense where

plaintiff employee "was aware of [employer's] anti-discrimination policy and its complaint

mechanisms . . . [and] never used these avenues to complain of racial discrimination.")

Here, the City had a widely disseminated, comprehensive anti-harassment and anti-

discrimination policy. (Exhibits "A" - "E"). The policy set forth the procedures to be

followed if an employee was the victim of harassment or discrimination, namely, to respond,

record, and report the unlawful behavior. The City appointed two "Harassment Officers,"

identified in the policy, both of whom were available to take reports of discriminating or

harassing behavior. Alternatively, employees could report such incidents to their individual

Department Heads, here the Chief of Police. Brewster did not respond to, record, or report

the conduct that she now complains of, as the policy directed. Her unreasonable failure to

follow the complaint procedures set forth in the policy entitles the City to the Faragher/Ellerth

affirmative defense.

While it is true that the affirmative defense is not available to an employer where "the

supervisor's harassment culminates in a tangible employment action, such as discharge,

demotion, or undesirable reassignment," Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 808,

the alleged discriminatory behavior in this instance did not "culminate" in Brewster's

termination. In fact, the decision to terminate Brewster was not made by any of the

individuals whom Brewster alleges engaged in discriminatory behavior. The mere presence

of an adverse employment action does not alone preclude the affirmative defense; rather, the

"defense is available to the employer despite the fact that the employee had been discharged,

where the alleged hostile work environment did not culminate in the employee's discharge,

but the employee was instead fired for another reason." Patterson v. CBS, Inc., 2000 U.S.

8915-0007/mmc

Dist. LEXIS 6916 (S.D.N.Y. 2000).  See also Citroner v. Progressive Casualty Ins. Co., 208

F.Supp.2d 328, 341 (E.D.N.Y. 2002) ("In this case, defendant is entitled to rely on *Faragher*

and *Ellerth* because, even though plaintiff was terminated, this termination was not the

culmination of any harassment against plaintiff.")

Moreover, while vicarious liability is presumed where the alleged discriminating acts

were committed by plaintiff's supervisor, a lesser standard is applied where harassment is

committed by a co-worker or co-employee.  In that instance, "an employer will be liable only

where the plaintiff demonstrates that 'the employer either provided no reasonable avenue for

complaint or knew of the harassment but did nothing about it.'"  Curtis v. Citibank, N.A.,

1999 U.S. Dist. LEXIS 23047, at *17-18 (S.D.N.Y., Dec. 13, 1999).  Accord Quinn v. Green

Tree Credit Corp., 159 F.3d 759, 767 (2nd Cir. 1998); Tomka v. Seiler Corp., 66 F.3d 1295,

1304 n.4 (2nd Cir. 1995).

**Defendant is Entitled to a Directed Verdict on Plaintiff's Title VII
Claims Because Plaintiff's Claims that She was Instructed Not to
Speak Spanish Cannot Support a Claim of Discrimination**.

Plaintiff contends that she was "ridiculed by her supervisors and co-workers when she

spoke Spanish to Hispanic co-workers." Pre-Trial Order, Plaintiff's Contentions, at 3.  Such

an allegation,  even if true, does not give rise to a claim for discrimination.

"Neither [Title VII] nor common understanding equates national origin with the

language that one chooses to speak."  Velasquez v. Goldwater Memorial Hospital, 88

F.Supp.2d 257, 262 (S.D.N.Y. 2000) (granting summary judgment in favor of defendant

employer where plaintiff terminated after being asked to stop speaking Spanish to co-

workers).  Where the challenged conduct relates to the language an employee speaks, "[a]

classification is implicitly made, but it is on the basis of language, *i.e.*, English-speaking

versus non-English-speaking individuals, and not on the basis of race, religion or national

8915-0007/mmc

origin.  Language, by itself, does not identify members of a suspect class." <u>Soberal-Perez v. Heckler</u>, 717 F.2d 36, 41 (2nd Cir. 1983).

Furthermore, defendant is entitled to a directed verdict on this issue unless plaintiff proffers sufficient evidence to support an inference that any comments about her speaking Spanish were made with discriminatory intent.  "To establish intentional discrimination, a plaintiff must show that the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of,  its adverse effects upon an indentifiable group." <u>Soberal-Perez</u>, 717 F.2d at 42 (internal quotation marks omitted).

Moreover, to lend support to her claim that the Poughkeepsie Police Department was a workplace hostile to bilingual employees, she relies upon a claim that Officer Luis Juncosa had the "derogatory" term "Spanglish" addressed to him with respect to his manner of speech. (Pre-Trial Order, p. 3)  This word is hardly "derogatory", as it is commonly used to describe a mixture of English and Spanish.  Indeed, last year a major Hollywood motion picture starring Adam Sandler, titled "Spanglish", was in general release. (<u>Exhibit "A"</u>).  The word is part of our common parlance without any negative ethnic overtones. Therefore its use with respect to a co-employee cannot be relied upon to create an inference that plaintiff was victimized by an anti-Spanish speaking bias.  There certainly is no nexus between its use and her discrimination claims.  <u>See, e.g.</u>, <u>Arguenta v. North Shore Lonh Island Jewish Health Center</u>, 2003 U.S. Dist. LEXIS 20456, at *20  (E.D.N.Y. Nov. 6, 2003) (granting summary judgment in favor of defendant where plaintiff claims that she was reprimanded for violating an alleged English-only policy, but could not show a causal link between any such policy and her termination).  Brewster has never contended that she was fired because she spoke Spanish. <u>See</u> generally Pre-Trial Order.

Finally, even if Brewster otherwise made out a claim for discrimination based on the

8915-0007/mmc

instruction not to speak Spanish, the fact that a co-worker or even a supervisor instructed her

not to speak Spanish on isolated occasions is "not sufficient evidence for a rational tried of

fact to infer a discriminatory animus on the part of [the employer] itself." Arguenta, 2003

U.S. Dist. LEXIS 20456 at *19.  Plaintiff does not contend that the challenged conduct was

pursuant to a discriminatory policy, procedure or practice of the City.  Thus, absent any

evidence that the City was aware of the discriminatory conduct and did nothing about it,

plaintiff cannot prevail on this claim.

**The Alleged Discriminatory Conduct Was Sufficiently Isolated
that it Cannot, as a Matter of Law, Support a Discrimination Claim.**

"Stray remarks, even if made by a decisionmaker, do not constitute sufficient evidence

to make out a case of employment discrimination." Danzer v. Norden Systems, Inc., 151 F.3d

50, 56 (2nd Cir. 1998); Woroski v. Nashua Corp., 31 F.3d 105 (2nd Cir. 1994).

Plaintiff contends that she was the subject of ridicule and derogatory comments when

she spoke Spanish, and that her co-employee Luis Juncosa was ridiculed due to his accent and

manner of speaking.  However, 'isolated comments, unrelated to the challenged

[employment] action,  are insufficient to show discriminatory animus." Orisek v. American

Institute of Aeronautics and Astronautics, 938 F.Supp. 185, 192 (S.D.N.Y. 1996); O'Connor

v. Viacom Inc., 1996 U.S. Dist. LEXIS 5289, at *13-14 (S.D.N.Y. 1996).

In order to establish a hostile working environment, the workplace must be

"permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently

severe or pervasive to alter the conditions of the victim's employment." Tomka v. The Seiler

Corp., 66 F.3d 1295, 1305 (2nd Cir. 1995), quoting Harris v. Forklift Systems, Inc., 510 U.S.

17 (1993).  Isolated remarks or occasional episodes are not enough to create an abusive

environment.  Tomka, 66 F.3d at 1306, n.5; Carrero v. New York City Housing Auth., 890

F.2d 569, 577 (2nd Cir. 1989).

8915-0007/mmc

Accordingly, if plaintiff's evidence does not establish conduct more pervasive than occasional remarks, isolated incidents, and/or stray comments, then plaintiff's claim must fail as a matter of law.

**Plaintiff is Not Entitled to Any Damages Resulting**
**from the Termination of Her Employment.**

Plaintiff had claimed that her termination was a result of her fiancé's protected speech. (Fourth Cause of Action, Complaint ¶18, Pre-Trial Order "Nature of the Case", ¶1, Pre-Trial Order ¶4A, "Plaintiff's Contentions" pp. 7-8)  That claim has now been dismissed pursuant to Garcetti v. Ceballos, – U.S. –, 2006 U.S. LEXIS 4341 (May 30, 2006).

She also claimed that her termination was in violation of her Equal Protection rights in that, as compared to white male police officers, the sanction for her misconduct was disproportionately harsh and, because of that, had she been "a white male employee she would still be employed" (Third Cause of Action, Complaint ¶21, Pre-Trial Order "Nature of the Case" ¶1, Pre-Trial Order ¶4A, "Plaintiff's Contentions" pp. 9-10).  Based upon the Court's ruling with respect to defendant's in limine motion, she cannot offer proof with respect to disciplinary matters involving white male police officers.  Thus, she cannot establish her termination violated the Equal Protection Clause.  Plaintiff's remaining causes of action – a Title VII and Equal Protection hostile workplace claim based on national origin and gender, and a First Amendment claim based on defendant's alleged refusal to accept her criminal compliant against Tinnessa Denny - do not support a monetary award based on damages allegedly incurred as a result of her termination.

Plaintiff's remaining contentions attempt to establish a hostile work environment and disparate treatment while working on the basis of national origin and/or gender.  The allegations intended to establish discrimination and/or a hostile work environment include the following: she was ridiculed for speaking Spanish; her co-worker Luis Juncosa was ridiculed

8915-0007/mmc

because of his Hispanic accent; she was routinely assigned to more dangerous areas than her white male counterpart; she was not offered the position of supervising the school crossing guards that was offered to her white male counterpart; she was admonished for requesting back-ups, and such requests were denied; she was admonished to limit the amount of information she gave over the police radio, whereas her white male counterpart was not so admonished; and she was given an unsafe "Mule" for the performance of her duties, her complaints regarding the Mule were unheeded, but after she was terminated the remaining male traffic enforcement officers were issued cars.  Pre-Trial Order, ¶4A, "Plaintiff's Contentions", at 3-6.

She does not contend that her termination was the result of any of these allegations of discrimination.  See generally Pre-Trial Order.  She did not resign and thus does not allege that she was constructively discharged as a result of the hostile work environment. She does not allege that she was demoted or denied a promotion for discriminatory reasons.  Indeed, plaintiff's contentions establish no causal link whatsoever between the allegations of discrimination and her termination, or any other adverse employment action.  Accordingly, if she establishes hostile work environment discrimination on the basis of gender and/or national origin, her damages must be limited to claimed emotional distress and pain and suffering, and must expressly exclude any claimed damages resulting from her termination.

It would cause unnecessary jury confusion and prejudice to defendant to permit testimony with respect to, for instance, past and future wage loss, benefit and pension differential, or any other special, or even emotional, damages flowing from her termination, which is no longer challenged as an unlawful violation of her First Amendment rights or the

8915-0007/mmc

Equal Protection Clause.

As a result, her proof with respect to damages must be limited to exclude those that she alleges flow from her termination rather than those that she alleges she suffered while in the City's employ.

DATED:       Poughkeepsie, New York
             June 14, 2006

                                        Yours, etc.

                                        McCABE & MACK LLP

                                        By: _____
                                             David L. Posner (0310)
                                        *Attorneys for Defendant*
                                        63 Washington Street
                                        P.O. Box 509
                                        Poughkeepsie, NY 12602-0509
                                        Tel: (845) 486-6800