UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

IBIS BREWSTER,

                                    Plaintiff,

                -against-                                    04 Civ. 4204 (CM)

THE CITY OF POUGHKEEPSIE,

                                    Defendant.

------------------------------------------------------------------x

### DECISION AND ORDER GRANTING DEFENDANT'S
### MOTION FOR JUDGMENT AS A MATTER OF LAW

McMahon, J:

        The City of Poughkeepsie ("the City"), seeking to set aside a jury verdict in favor of

Plaintiff Ibis Brewster on her hostile work environment claim and against the City on its asserted

affirmative defense thereto, moves this Court for judgment as a matter of law pursuant to Rule

50(b) or, in the alternative, for a new trial pursuant to Rule 59(a).

        Plaintiff opposes the motion and cross-moves for reasonable attorneys fees as a

"prevailing party."

        For the reasons outlined below, defendant's Rule 50(b) motion is granted.  Accordingly,

plaintiff's motion for attorneys fees is denied as moot.

### Background

        Ibis Brewster, an Hispanic of Cuban origin, worked as a civilian Parking Enforcement

Agent ("PEA") in the Traffic Safety Unit of the City of Poughkeepsie Police Department from

November 27, 2000, until her employment was terminated on March 14, 2003.

        On June 4, 2004, after receiving a "right to sue letter" from the EEOC, plaintiff filed the

instant action, alleging discriminatory termination on the basis of gender, race and/or national origin; disparate treatment on the basis of gender, race and/or national origin; hostile work environment on the basis of race and/or national origin; First Amendment retaliatory termination; and violation of the First Amendment right to petition.

Defendant filed neither a motion to dismiss the complaint nor a timely motion for summary judgment.  However, in connection with defendant's *in limine* motions, the Court dismissed plaintiff's disparate treatment claim at the final pre-trial conference held on June 2, 2006.  Likewise, in light of the Supreme Court's recent decision in <u>Garcetti v. Ceballos</u>, 2006 WL 1458026 (May 30, 2006), the Court dismissed plaintiff's First Amendment retaliatory termination claim prior to trial.

At the close of plaintiff's evidence, defendant moved the Court under Rule 50(a) for a directed verdict on all of plaintiff's remaining claims.  The Court granted defendant's motion with regard to plaintiff's discriminatory termination claim, to the extent it claimed discrimination on the basis of gender; it reserved on the motion with regard to plaintiff's other claims. Defendant renewed its Rule 50(a) motion at the close of all evidence, and the Court again reserved judgment.

After more than three days of trial, plaintiff's claims of discriminatory termination on the basis of race and/or national origin, hostile work environment on the basis of race and/or national origin, and violation of the right to petition were submitted to the jury.  Following approximately seven hours of deliberations, the jury returned a verdict in favor of defendant on the discriminatory termination and right to petition claims, and in favor of plaintiff on the hostile work environment claim.  The jury further found that the City had not established its asserted

affirmative defense to the hostile work environment claim.  Plaintiff was awarded damages in the amount of $12,500.

Defendant timely filed the present motion for judgment as a matter of law, seeking to set aside the jury's hostile work environment verdict and/or its finding on defendant's affirmative defense.  In the alternative, defendant moves for a new trial on the hostile work environment claim.  Plaintiff opposes the motion and moves for attorneys fees as a "prevailing party" under Title VII.

**Standard of Review**

A.   Judgement as a Matter of Law

Federal Rule of Civil Procedure 50(a) provides:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Under Rule 50(b), if the court does not grant a motion for judgment as a matter of law at the close of all the evidence, "The movant may renew its request [] by filing a motion no later than 10 days after entry of judgment– and may alternatively request a new trial or join a motion for a new trial under Rule 59."  Fed. R. Civ. P. 50(b).

A movant seeking to set aside a jury verdict faces a "high bar."  Lavin McEleney v. Marist College, 239 F.3d 476, 479 (2d Cir. 2001).  "Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor."  Galdieri-

Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998) (citations omitted). In deciding a Rule 50 motion, the court must defer to the credibility assessments that may have been made and the reasonable factual inferences that may have been drawn by the jury.  Id.  The court cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury.  Fairbrother v. Morrison, 412 F.3d 39, 48 (2d Cir. 2005) (quoting Tolbert v. Queens College, 242 F.3d 58, 70 (2d Cir. 2001).  Thus, judgment as a matter of law should not be granted unless "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]."  Cruz v. Local Union No. 3, Int'l Bhd. Of Elec. Workers, 34 F.3d 1148, 1154 (2d Cir. 1994) (citations omitted).

B.      New Trial

        Pursuant to Rule 59(a)(1), a new trial may be granted ". . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  Like a Rule 50 motion, a motion for a new trial must be filed within ten days after entry of judgment.  Fed. R. Civ. P. 59(b).

        The standard for granting a new trial differs in two significant ways from the standard governing Rule 50 motions: (1) a new trial may be granted even if there is substantial evidence supporting the jury's verdict, and (2) a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.  DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133-34 (2d Cir.1998) (citation omitted).  Although a trial court is afforded

4

considerable discretion under Rule 59(a), a motion for a new trial should be granted only when, in the opinion of the district court, "the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." Id. at 133 (quoting Song v. Ives Labs. Inc., 957 F.2d 1041, 1047 (2d Cir. 1992). Accordingly, a court should rarely disturb a jury's evaluation of witness credibility. Id. at 134. Moreover, the mere fact that the trial judge disagrees with the jury's verdict is not a sufficient basis to grant a new trial. Mallis v. Bankers Trust Co., 717 F.2d 683, 691 (2d Cir. 1983).

## Conclusions of Law

The City contends that there is a complete absence of evidence supporting the jury's finding of a hostile work environment. In the alternative, it contends that, even if a hostile work environment did exist, the evidence overwhelmingly supports a judgment in favor of defendant on the basis of its *Faragher/ Ellerth* affirmative defense.

Under the extremely deferential standard of Rule 50 (although NOT under the far less deferential standard of Rule 59), I conclude that there is some basis in the record on which a reasonable jury could have found in plaintiff's favor on her hostile work environment claim. However, the evidence adduced at trial overwhelmingly supports a finding that plaintiff acted unreasonably when she admittedly failed to utilize the complaint procedure outlined in the City's anti-harassment policy. Accordingly, defendant is entitled to a judgment as a matter of law on its affirmative defense.

A.      Hostile Work Environment

1.      *Background Law*

Title VII makes it unlawful for an employer to discriminate against any individual on the basis of his or her race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  To prevail on a Title VII claim under a hostile work environment theory, "The plaintiff must show [both] that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered," and that a specific basis exists for imputing the objectionable conduct to her employer.  Fairbrother, 412 F.3d at 48-9 (citing Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002)).

Title VII does not establish a "general civility" code for the American workplace. Petrosino v. Bell Atl., 385 F.3d 210, 223 (2d Cir. 2004) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)).  A hostile work environment will be found to exist only where the alleged harassment or objectionable conduct is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Fairbrother, 412 F.3d at 48 (quoting Alfano, 294 at 373).  "Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support" a hostile work environment claim.  Petrosino, 385 F.3d at 223.

In determining whether the alleged harassment is of "such quality or quantity" as to meet the "severe and pervasive" standard, courts consider the totality of the circumstances, including such factors as the frequency of the conduct, its severity, whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's work performance.  Harris v. Forklift Sys., Inc, 510 U.S. 17, 23

6

(1993); see also Williams v. County of Westchester, 171 F.3d 98, 100 (2d Cir. 1999) (*per curiam*).  The test has both an objective and subjective component: "A work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it."  Mormol v. Costco Wholesale Corp., 364 F.3d 54, 58 (2d Cir. 2004) (quoting Brennan v. Metro. Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999)).

Evidence of harassment directed at co-workers can be relevant to an employee's own hostile work environment claim, even if the employee was not present when the comments were made and only learned of them second-hand.  Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 71 (2d Cir. 2000) (citing Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997)).  "Because the crucial inquiry focuses on the nature of the workplace as a whole, a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim."  Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000).

2.    *Severe and Pervasive Harassment*

Defendant argues that the evidence adduced at trial is legally insufficient to support a finding that the incidents complained of rose to the level of a hostile work environment.  Specifically, defendant contends that any comments made to plaintiff were occasional and sporadic, and were neither objectively nor subjectively hostile.

Plaintiff counters, and the Court agrees, that – notwithstanding significant evidence to the contrary – there was at least some evidence presented at trial on which the jury's hostile work environment verdict could have been predicated.  Thus, it cannot be said that there was "such a complete absence of evidence supporting the verdict that the jury's finding could only

have been the result of sheer surmise and conjecture."

Plaintiff testified on direct examination that "[she] was always being told remarks when [she] was speaking in Spanish, a lot of snide remarks" including, "Speak English.  Go back to your own country if you want to speak Spanish.  You're in our country."  Tr. at 53:11-15.[1] Additionally, she testified that, "Just all the time, people [at the Police Station] try to mimic the Spanish when I was speaking it, making gibberish sounds."  Tr. at 53:15-17.

Plaintiff also testified that members of the Police Department mimicked the accent of Luis Juncosa, a Cuban police officer with whom she often spoke Spanish.  She claimed that they referred to his manner of speaking as "Spanglish," "and they said they were taking his battery from his radio because they were tired of hearing him."  Tr. at 66:9-67:5.

If credited by the jury, plaintiff's testimony alone would have provided some basis for the jury to return the verdict that it did.  However, evidence that a severe and pervasive hostile work environment existed was not limited to plaintiff's testimony.  Iris Arroyo, an Hispanic colleague of plaintiff's, testified that on one occasion, while she was speaking Spanish with plaintiff, she heard someone at the station say, "Hey hey.  This is America.  Speak English."  Tr. Day 3 at 14:1-3.  Likewise, Officer Juncosa testified that, in addition to calling his manner of speaking "Spanglish" and threatening to take away his radio batteries, people at the Department asked him, "Hey, you know Castro?" or "What about Castro?"  Tr. Day 3 at 27:22-29:25.  Whether or not plaintiff was present when these comments were made to Juncosa, the jury could have found that they contributed to a hostile work environment.  See Whidbee, 223 F.3d at 71.

---

[1] While the transcript of the first two days of trial is paginated seriatim, the transcript of the third day starts over with page 1.  Accordingly, references to the first two days are cited in the form of "Tr. at ___," while references to the third day are cited as "Tr. Day 3 at ___."

Defendant argues that, even if the jury credited this testimony, the comments described were not "sufficiently continuous and concerted" to have altered the conditions of plaintiff's working environment.  See Cruz, 202 F.3d at 570.  Defendant emphasizes that, in the three years that Arroyo and Brewster were co-workers, Arroyo heard only one such comment directed at Brewster, and never heard any comments of this type directed at anyone else in the Department, including Officer Juncosa.  Tr. Day 3 at 13:24-14:7, 15:20-22, 16:18-17:5.  Similarly, Juncosa testified that, while fellow officers would sometimes "kid with [him] about speaking Spanish," he never heard anybody tell plaintiff to speak English, or to go back to her country if she wanted to speak Spanish.  Tr. Day 3 32:10-32:16.  Lieutenant Thomas Pape, who supervised the Traffic Safety Unit, testified that, while he heard people mimic Officer Juncosa's accent and call his manner of speaking "Spanglish," he never heard anyone make fun of plaintiff for speaking Spanish, never heard anyone tell her to go back to her country, and never heard anyone mimic her accent.  Tr. at 327:15-330:5.  Nor did either Chief of Police Ronald Knapp or Sergeant Melvyn Clauson ever hear anyone make "comments or jokes in any way about Ms. Brewster and the way she spoke Spanish at police headquarters."  Tr. at 231:3-18; Tr. Day 3 at 80:24-81:10.

Defendant also points out that, though plaintiff testified on direct examination that offensive comments were made to her and to Officer Juncosa "on a regular basis . . . on a daily basis or every other day," plaintiff testified at her deposition that comments to the effect of "Go back to your country if you want to speak Spanish," were made only on a "couple of occasions."  Tr. at 58:4-10, 67:6-12, 150:25-152:12.

Undoubtedly, the evidence of "continuous and concerted" harassment is far from undisputed.  Nonetheless, the jury could have credited– and presumably did credit– plaintiff's

9

testimony, and concluded that the remarks about which she complains were more than just offhand comments or isolated incidents of offensive conduct. Deferring to the jury's credibility assessments and viewing the evidence most favorably to the plaintiff, as I must on a Rule 50 motion, I cannot say that there was a complete absence of evidence supporting a finding that plaintiff's "workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered."

Defendant argues that, even if the comments complained of were made with sufficient frequency, they were neither objectively nor subjectively hostile. Defendant points to plaintiff's EEOC complaint, in which she described the comments as mere "teasing," and emphasizes that, while she kept a detailed diary of things that happened at work, there is not a single reference in the diary to harassment or offensive comments. Tr. at 147:4-149:2, 121:16-124:4.

Moreover, defendant relies on the testimony of Arroyo and Juncosa– both Hispanic– to support its claim that the comments directed at plaintiff were not objectively hostile. Iris Arroyo testified, not only that she does not find the term "Spanglish" to be offensive, but also that she was not offended and "didn't give it any thought" when a colleague commented to her and Mrs. Brewster, "Hey, hey. This is America. Speak English." Tr. Day 3 at 15:15-19, 17:23-4. She testified further that plaintiff said nothing in response to the comment and did not appear upset by it. Tr. Day 3 at 16:7-17. Likewise, Officer Juncosa testified that he never heard anything at the Department that would offend him. Tr. Day 3 at 34:19-20. He considered comments about "Spanglish" to be "kidding around between guys," and "a friendly gesture." Tr. Day 3 at 28:1-13.

Despite defendant's argument to the contrary, the jury was presented with at least some

evidence that Mrs. Brewster perceived the comments made to her to be hostile.  When asked on direct examination how the comments made her feel, plaintiff responded: "Like garbage, like a piece of crap."  Tr. at 59:14-15.  Additionally, Michael North, plaintiff's therapist, testified that, in the course of seeking treatment from him, plaintiff spoke to him about how she felt when people made comments about her speaking Spanish.  Tr. Day 3 at 37:11-25.  Nor can the Court conclude that, Arroyo's and Juncosa's testimony notwithstanding, the jury could not have found that a reasonable Hispanic person or person of Cuban origin would not have found the comments to be hostile.

While an independent review of the evidence might have resulted in a verdict for defendant, that is not the standard to be applied on a Rule 50 motion.  Because there was some basis, however slight, for the jury to return the verdict that it did, defendant's motion with respect to the existence of a hostile work environment must be denied.

  3.  *Harassment on the Basis of Race and/or National Origin*

Defendant argues that, even if plaintiff was subjected to a hostile work environment, the hostility was not based on plaintiff's race and/or national origin, and thus is not actionable under Title VII.

As defendant notes, Title VII makes it unlawful for an employer to discriminate against an individual on the basis of, *inter alia*, his or her race or national origin.  It does not protect against discrimination on the basis of language.  "Neither [Title VII] nor common understanding equates national origin with the language that one chooses to speak."  Velasquez v. Goldwater Mem'l Hosp., 88 F.Supp.2d 257, 262 (S.D.N.Y. 2000).  Indeed, where the challenged conduct relates to the language an employee speaks, "A classification is implicitly made, but it is on the

basis of language, *i.e.*, English-speaking versus non-English-speaking individuals, and not on the basis of race [] or national origin.  Language, by itself, does not identify members of a suspect class."  Soberal-Perez v. Heckler, 717 F.2d 36, 41 (2d Cir. 1983); accord Olagues v. Russoniello, 770 F.2d 791, 802 (9th Cir. 1985).

Accordingly, the jury was instructed as follows:

> The language that a person speaks does not, by itself, identify him/her as being of a particular race or as having a particular national origin.  Thus, were you to find that the City intentionally discriminated against Ms. Brewster. . . [by] subjecting her to a hostile work environment [] because she speaks Spanish, that would be insufficient to prove that she was subjected to unlawful discrimination on the basis of her race or national origin.  You may consider language discrimination as some evidence of unlawful discrimination, but language discrimination alone is not enough.  Plaintiff must introduce additional evidence to tie language discrimination to her race or her national origin.

Defendant argues that plaintiff failed to introduce any evidence whatsoever tying comments about her use of Spanish at work to her race (Hispanic) or national origin (Cuban).  Thus, defendant asserts that the jury's finding of a hostile work environment on the basis of race and/or national origin "could only have been the result of sheer surmise and conjecture."

While the evidence is indeed thin, it is not completely lacking.  When asked on direct examination if anything was said to her in the station about her race or ethnicity, plaintiff replied that people said to her, "Speak English.  Go back to your own country if you want to speak Spanish.  You're in our country."  Tr. at 53:11-21.  These comments referencing plaintiff's *country* – as opposed to simply comments about her language – coupled with remarks to Officer Juncosa about Fidel Castro – the national leader of Cuba – provide some basis on which the jury could conclude that the hostility directed at plaintiff was based, not only on the language she

12

spoke, but also on her Cuban national origin.  Because the evidence is not legally insufficient to support a finding of hostility on the basis of race and/or national origin, the Court declines to disturb the jury's verdict in this regard.

> 4.     *Imputation of Objectionable Conduct to the City*

In order to survive defendant's motion for judgment as a matter of law, plaintiff must also have met her burden of demonstrating that a specific basis exists for imputing the objectionable conduct to the City.  "An employer is presumptively liable for a hostile work environment created by a supervisor."  <u>Fairbrother</u>, 412 F.3d at 53.  As discussed in detail below, however, where the objectionable conduct is attributed to a supervisor and no adverse employment action was taken in connection with the harassment, an affirmative defense may be available to the employer.  In contrast, "Where an employee is the victim of [] harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action."  <u>Petrosino</u>, 385 F.3d at 225.

In this case, plaintiff attributes the objectionable conduct to, *inter alia*, three of her supervisors – Lieutenant Bennett, Lieutenant Rygiel and Sergeant Clauson.  Tr. at 58:19-60:3. Defendant does not dispute that – subject to its affirmative defense – the City is presumptively liable for the conduct of these supervisors.

Defendant correctly asserts, however, that plaintiff failed to meet her burden of proving that the City is also liable for the conduct of plaintiff's non-supervisory co-workers.  The Court notes that plaintiff did not pursue this theory of liability at trial.  In fact, this issue was raised for

the first time in plaintiff's Opposition to Defendant's Motion– presumably because plaintiff

recognized that defendant might well succeed on its motion for judgment as a matter of law on

its affirmative defense.

Because plaintiff concedes that she never told anyone about the harassment she suffered,

she could only establish employer liability for acts of her co-workers by showing that the City

had constructive knowledge of the harassment.  However, plaintiff did not introduce a shred of

evidence of constructive knowledge at the trial.  As the Second Circuit has explained, "The

question of when an official's actual or constructive knowledge [of harassment] will be imputed

to the employer is determined by agency principles."  Distasio v. Perkin Elmer Corp., 157 F.3d

55, 63-64 (2d Cir. 1998) (citing Torres v. Pisano, 116 F.3d 625, 636-7 (2d Cir. 1997)).  An

official's knowledge will be imputed to an employer when: (a) the official is at a sufficiently

high level in the company's management hierarchy to qualify as a proxy for the company; or (b)

the official is charged with a duty to act on the knowledge and stop the harassment; or (c) the

official is charged with a duty to inform the company of the harassment.  Id.  Plaintiff introduced

no evidence to establish that any person at the Department who was aware of the harassment

either was a "management level" employee or was charged with a duty to stop and/or inform the

City of the offensive conduct.

In the absence of any evidence of constructive knowledge by the City, no reasonable

juror could have found the City liable for the conduct of plaintiff's non-supervisory co-workers.

However, in this case the jury could not have so found because the issue was not before it.

Plaintiff's counsel did not raise the issue of constructive knowledge at any point during the trial

(including in his list of issues to be tried in the Final Pre-Trial Order).  Counsel also did not

request a constructive knowledge charge or object to the absence of a jury charge on constructive

knowledge.[2]   The jury was never told to deliberate on that issue, or provided with the standard

upon which it was to be decided.  At this stage in the litigation – after the case has been tried and

a verdict returned – plaintiff simply cannot raise a new and untried theory of liability.

B.   _Faragher/ Ellerth_ Affirmative Defense

The City contends that, even if plaintiff met her burden of proving that a hostile work

environment existed and that it was based on her race and/or national origin, defendant is entitled

to a judgment as a matter of law on its affirmative defense.  The Court agrees.

As the Supreme Court recognized in Faragher v. City of Boca Raton, 524 U.S. 775

(1998) and Burlington Ind., Inc. v. Ellerth, 524 U.S. 742 (1998), where – as here – the

harassment is attributed to a supervisor with immediate or successively higher authority over the

employee, an affirmative defense may be available to the employer.   "A court looks first to

whether the supervisor's behavior 'culminate[d] in a tangible employment action' against the

employee." Petrosino, 385 F.3d at 225 (quoting Ellerth, 524 U.S. at 765).  If the employee did

suffer tangible employment action, defined as "a significant change in employment status, such

as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or

a decision causing a significant change in benefits," "The employer will, _ipso facto_, be

vicariously liable." Ellerth, 524 U.S. at 761; Fairbrother, 412 F.3d at 49 (quoting Mack v. Otis

Elevator Co., 326 F.3d 116, 124 (2d Cir. 2003)).  If no such tangible employment action is

present, an employer will still be liable for a hostile work environment created by a supervisor

---

[2]Nor could this have been an oversight considering the number of revisions the jury instructions underwent in this case and the meticulous detail with which they ultimately were drafted.

15

unless the employer successfully establishes the so-called *Faragher/ Ellerth* defense.  In order to prevail on that defense, an employer must show that (a) it "exercised reasonable care to prevent and correct promptly any [] harassing behavior," and (b) "the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524 U.S. at 807;  Ellerth, 524 U.S. at 765.  Defendant bears the burden of proving its affirmative defense.  Leopold v. Baccarat, Inc., 239 F.3d 243, 245 (2d Cir. 2001).

In this case, plaintiff attributes the objectionable conduct to, *inter alia*, three of her supervisors.  However, she concedes that this harassment did not culminate in any tangible employment action.  Accordingly, if defendant has met its burden of proving both elements of the *Faragher/ Ellerth* defense, it will not be liable for the hostile work environment to which plaintiff was subjected.

"Although not necessarily dispositive, the existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has satisfied the first prong of this defense." Leopold v. Baccarat, Inc., 239 F.3d 243, 245 (2d Cir. 2001) (quoting Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 295 (2d Cir. 1999).  It is undisputed that the City had an anti-harassment policy in effect throughout the duration of plaintiff's employment, and that plaintiff received, read, and retained a copy of that policy.  Tr. at 117:19-19:15.  While the policy that plaintiff received in November 2000 applied only to sexual harassment, the revised version that plaintiff received in August 2001 "prohibited harassment based upon race, color, gender, religion, age, disability and national origin."  Def. Ex. A, AAA.  The evidence established that both the original and updated policy contained a

complaint procedure, whereby employees who felt that they were victims of harassment were required to (1) Respond, by making their feelings known and asking that the behavior stop, (2) Record, by noting the time, place and specifics of each incident, including witnesses, and (3) Report, by notifying either the Department Head or one of the two Harassment Officers identified in the policy.  Id.  As a result, the jury concluded that defendant satisfied the first element of the *Faragher/ Ellerth* defense.

With respect to the second element, however, the jury found against the City, concluding that defendant had not "proven by a preponderance of the evidence that plaintiff unreasonably failed to utilize the policy's complaint procedures to address the conduct that she alleges occurred."  It is this part of the verdict that defendant challenges, arguing that the evidence — even viewed in the light most favorable to plaintiff — "is insufficient to permit a reasonable juror to find in [plaintiff's] favor."

An employee who simply fails to avail herself of grievance procedures will be deemed to have acted unreasonably unless the employee "come[s] forward with one or more reasons why the employee did not make use of the procedures."  Leopold, 239 F.3d at 246.  Plaintiff's reasons for not reporting must be "based on a credible fear that her complaint would not be taken seriously or that she would suffer some adverse employment action as a result of filing a complaint."  Caridad, 191, F.3d at 295.  An employee's subjective belief, however,  is insufficient to establish a credible fear.  Rather, evidence must be produced to the effect that the employer has either ignored or resisted similar complaints in the past, or has taken adverse actions against employees in response to such complaints.  Leopold, 239 F.3d at 257.

17

The defendant bears the ultimate burden of persuasion on the second element of the defense, but may carry that burden by first introducing evidence that plaintiff failed to avail herself of the defendant's complaint procedure and then relying on the absence or inadequacy of the plaintiff's justification for that failure.  Id. at 246.

Plaintiff concedes that, despite her awareness of the City's complaint procedure, she never reported the harassment she suffered to either James Wojtowicz or Deborah Whitton, the two Harassment Officers identified in the policy, or to Chief Knapp, her Department Head.  Tr. at 121:7-15.  Plaintiff testified, "I didn't know who to go to.  And I didn't think anybody would care, since I had my own supervisors making these comments, nobody was going to care."  Tr. at 60:15-18.

Plaintiff's claim that she "didn't know who to go to" is not a reasonable justification for her failure to avail herself of the City's complaint procedure.  This excuse is unrelated in any way to a legitimate fear of what might happen if she did complain.  Moreover, had plaintiff made even the slightest effort, she easily could have figured out to whom she should address her grievance.  Plaintiff worked in the same building as Mr. Wojtowicz and Ms. Whitton.  And while she testified that she was not familiar with either of these individuals and did not know where their offices were located, she acknowledged on re-cross examination that she never asked anyone where Mr. Wojtowicz's or Ms. Whitton's offices were, and never "bothered" to look in the office directory in the lobby of City Hall.  Tr. at 192:25-193:12.

Likewise, plaintiff explained that she did not complain to Chief Knapp because she (mistakenly) thought Sergeant Clauson was the Department Head and, since he was one of the officers that harassed her, "it wouldn't make any sense" to complain to him.  Tr. at 190:2-15.

18

However, plaintiff never inquired whether Clauson, as opposed to the Chief of Police, was the Department Head.  Tr. at 194:17-19.  Additionally, she recognized that Sergeant Clauson had lieutenants, a deputy chief, and a chief above him, and she admitted on cross-examination that Chief Knapp was the Head of her Department.  Tr. at 176:18-19; 193:16-194:9.

Ultimately, plaintiff admitted that not knowing who the Harassment Officers were or where their offices were located, and not knowing who the Department Head was, "has nothing to do with why I did not complain to them."  Tr. at 193:13-194:11.  When pressed by her attorney for the real reason that she did not complain, plaintiff stated that she knew of one unspecified sexual harassment complaint that, in her opinion, had not been handled correctly; she "didn't feel that there was a major reprimand;" and she "felt that nothing was seriously done about it."  Tr. at 60:24-61:10.  Plaintiff provided no detail whatsoever about the nature of the complaint, who made it, when it was made, how it was handled, or its outcome.  Her vague, subjective belief that a prior complaint was not handled effectively, or that the action admittedly taken – a reprimand – was not as "strict" as *she* thought it should have been falls far short of her evidentiary burden of showing that prior complaints were "ignored or resisted," or that adverse employment actions were taken against the complainant.

Nor can plaintiff establish credible fear by testifying that she did not know of  any complaints that were handled appropriately.  Rather, she must show affirmatively that she knew of complaints that were in fact ignored or resisted.   As I explained at trial, "The fact that investigations are conducted in confidence does not give rise to a reasonable belief, especially where, in any Civil Service environment, the law requires that everything be done in confidence."  Tr. Day 3 at 66:10-15.

19

Chief Knapp testified that he received two sexual harassment complaints during his tenure as Police Chief.  His unrefuted testimony established that both were fully investigated. The first such complaint was made by plaintiff's husband, Joseph Brewster.  It was turned over to the anti-harassment officers, who investigated the matter and dismissed the charge as unfounded.  Tr. at 276:20-278:6.  Because plaintiff did not learn about this complaint until after her termination, this cannot be the incident to which plaintiff referred.  Tr. at 141:25-142:4.

The other sexual harassment complaint involved one Officer Czaplicki, who lifted a female officer's skirt.  Chief Knapp testified that the incident was investigated, and disciplinary action was taken.  Specifically, Officer Czaplicki lost ten days pay and was required to attend a formal sexual harassment training.  Tr. at 278:7-279:23; 284:7-13.  This might be the "reprimand" that plaintiff deemed insufficient, although that would be sheer speculation, since plaintiff never identified who was involved in the incident to which she referred.

Plaintiff does not dispute that these incidents were handled in the way that Chief Knapp testified, nor does she introduce additional evidence that other complaints were ignored or not taken seriously.  Contrary to her subjective belief then, "The undisputed facts . . . indicate that [the City] endeavors to investigate and remedy problems reported by its employees."  Caridad, 191 F.3d at 295.

"[Plaintiff] may have had reasons that were, for her personally, sufficient to support a decision not to report [her supervisors'] behavior [], but that cannot be part of our analysis." Finnerty v. William H. Sadlier, Inc., 2006 WL 910399, *4 (2d Cir. April 7, 2006) (slip copy). Plaintiff did not produce any evidence that her employer has ignored or resisted similar complaints or has taken adverse actions against employees in response to such complaints.

Rather, her proffered reason for not complaining rests entirely on an unsubstantiated belief that her complaint would not be taken seriously.  As the Second Circuit held in <u>Leopold</u>, where it rejected as a reasonable ground for the plaintiff's failure to complain a similar assertion that a prior complaint was not taken seriously, "Such conclusory assertions fail as a matter of law to constitute sufficient evidence to establish that her fear was 'credible.'" <u>Leopold</u>, 239 F.3d at 246; <u>see also</u> <u>Finnerty</u>, 2006 WL 910399; <u>Payano v. Fordham Tremont CMHC</u>, 287 F.Supp.2d 470 (S.D.N.Y. 2003); <u>Fierro v. Saks Fifth Avenue</u>, 13 F.Supp.2d 481, 492 (S.D.N.Y. 1998).

An employer cannot combat harassment of which it is unaware.  In this case, plaintiff neither availed herself of the City's complaint procedure nor offered an adequate reason for her failure to do so.  Accordingly, the City cannot be held liable for the conduct of plaintiff's supervisors.  "Although '[a] party faces a significantly heightened standard to obtain a judgment as a matter of law on an issue as to which that party bears the burden of proof,' [I] conclude that [defendant] has met its burden." <u>Finnerty</u>, 2006 WL 910399 at *3.

C.    <u>Motion for a New Trial</u>

Because the Court grants defendant's Rule 50(b) motion on the City's *Faragher/ Ellerth* affirmative defense, I need not reach defendant's alternative Rule 59(a) motion.  However, if I were not granting defendant's motion for judgment as a matter of law, I would grant its motion for a new trial.

Aside from plaintiff's own testimony about the comments she endured and the impact these comments had on her, the evidence supporting the jury's hostile work environment verdict is incredibly thin.  Moreover, in light of the other evidence adduced at trial, plaintiff's testimony that comments were made to her on a regular or daily basis, and that these comments offended

and humiliated her, strains credulity.  Chief Knapp, Lieutenant Pape, Sergeant Clauson, and

Officer Juncosa all testified that they never heard anyone make offensive comments to plaintiff.

Tr. at 231:3-18, 327:15-23; Tr. Day 3 at 32:10-16, 81:4-7.  Iris Arroyo testified that, in the three

years that she and plaintiff were co-workers, she heard only one comment directed at plaintiff.

Tr. Day 3 at 13:24-14:3.  Arroyo's testimony is consistent with plaintiff's deposition testimony,

in which she stated that offensive comments were made on "a couple of occasions."  Tr. at

150:25-152:12.  The glaring inconsistency between plaintiff's deposition testimony and her

testimony at trial impels this court toward granting the Rule 59 motion; on a motion for summary

judgment, I would not be permitted to consider an affidavit containing such a radical alteration

of plaintiff's deposition testimony.  Jones v. New York City Health & Hosp. Corp., 102 Fed.

Appx. 223, n.2 (2d Cir. 2004) (citing Mack v. U.S., 814 F.2d 120, 124 (2d Cir. 1987)).

Additionally, in contrast to her testimony at trial that the comments directed at her made

her feel "like garbage, like a piece of crap," plaintiff characterized the comments as "teasing" in

her EEOC complaint.  Tr. at 147:4-149:2.  The fact that she never reported the comments and

she never wrote about them in her diary is consistent with plaintiff's description of the comments

as mere teasing or joking.

In sum, the weight of the evidence does not support the jury's verdict.  Considering all of

the evidence, and assessing the credibility of the witnesses– as I may do on a Rule 59 motion– I

conclude that the verdict with respect to the existence of a hostile work environment is seriously

erroneous.  Accordingly, were I to reach defendant's alternative motion, I would have granted a

new trial.

**Conclusion**

22

### Conclusion

For the foregoing reasons, defendant's motion for judgment as a matter of law is granted, and plaintiff's motion for attorneys fees is denied as moot.

The Clerk of the Court is directed to enter judgment in favor of defendant on plaintiff's hostile work environment claim, and to close the file.

This constitutes the decision and order of the Court.

Dated: August 30, 2006.

_____
U.S.D.J.

BY FAX TO ALL COUNSEL

23